UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


VERAMONICA MIKSELL,

          Plaintiff

      v.                                   C-1-06-517

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant


       This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 7),defendant's objections (doc. no. 8) and plaintiff's response thereto (doc. no. 9). Plaintiff, an Supplemental Security Income claimant, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the defendant denying plaintiff's application for disability insurance benefits. In his Report and Recommendation which follows, the Judge concluded that the defendant's decision denying plaintiff disability insurance benefits is not supported by substantial evidence and therefore recommended that the case be remanded for an award of benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).

2

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Social Security Income in August, 2002, alleging an onset date of April 30, 2002.  Her application was denied both initially and upon reconsideration.  She then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Dayton, Ohio in February, 2005.  Plaintiff, who was represented by counsel, testified at the hearing as did Vocational Expert (VE), William Braunig.  After an unfavorable decision by the ALJ in July, 2005, Plaintiff processed an appeal to the Appeals Council, which denied review in June, 2006. The Appeals Council did consider a document called a "summary," authored by Plaintiff's then counsel.  The "summary" is not evidentiary in form, but is basically written argument.  Plaintiff then filed her Complaint, seeking judicial review, in August, 2006.  (See Tr. Pg. 333).

## STATEMENT OF ERRORS

Plaintiff asserts that the ALJ made a number of errors prejudicial to her case, the first  of which is that the ALJ erred when he gave more weight to the opinion of Dr. Rosenthal than to the opinion of Dr. Freeland.  In addition, Plaintiff asserts that the ALJ erred when he failed to consider Plaintiff's impairments arising from a bipolar disorder and post-traumatic stress disorder, disabling.  The third error is that the ALJ's decision with regard to Plaintiff's ability to perform household activities, was an overstatement of her ability to function.  The fourth is that the ALJ's hypothetical should have been more restrictive, and as a result, the VE was given an unrealistic picture of Plaintiff's ability to function in the workplace.

3

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she is 4'11" tall and weighed 137 lbs.  She is single, right-handed and lives with her daughter and a male friend in Middletown, Ohio.  She holds a GED and is a licensed driver.  Plaintiff's last employment was for Valeo Climate Control Corp. as a forklift driver, but prior employment was as a injection welding machine operator, as a waitress and in some type of office work for a "temp service."  When asked about problems affecting her ability to work, Plaintiff referred to problems dealing with stress, post traumatic stress disorder, flashbacks and panic attacks.

She testified that she was able to cook, vacuum and do laundry during her manic stages, but doesn't feel like doing anything when depressed.  She takes Abilify to "level out" her behavior.  Plaintiff described being manic more than being depressed.   Plaintiff implied that her flashbacks and panic attacks relate to some type of abuse by her father and can last longer  than one hour.  She testified that she was currently in therapy and that she was learning relaxation techniques. (Tr. 30-39)

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's residual functional capacity assessment, which he incorporated in his hypothetical question to the VE assumed an ability to do medium work, but limited to simple tasks and a minimal degree of personal contact.  The VE responded that Plaintiff could perform a representative number of jobs, such as dishwasher, hand packer and janitor.

4

When cross-examined by Plaintiff's counsel, the VE admitted that if an additional restriction to low stress jobs with no production quotas were added, the number of jobs would be reduced, but there would still be a representative number available.  The VE also admitted that if Plaintiff were to be absent at the rate of four days per month, she would be subject to discipline.

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff had severe impairments of asthma, bipolar disorder and a history of drug and alcohol abuse.  The ALJ found that none of her impairments met any Listing, either alone or in combination.  The ALJ found that Plaintiff has the residual functional capacity to perform medium work if restricted to performing simple tasks with minimal personal contacts.

## THE MEDICAL RECORD

Records from Good Samaritan Hospital show that Plaintiff was hospitalized in March, 1998 for attempted suicide after an overdose of Xanax after smoking pot, consuming alcohol and engaging in a "one night stand" with a 19-year-old boy.  The history indicated that Plaintiff had a "long previous psychiatric history."  After "years of neglect," she became a "heavy drug and alcohol abuser."  The incident was prompted by the death of her mother and her husband's leaving the marital home after she told him about her tryst.  Plaintiff's husband is a police officer.  The diagnosis was "acute bereavement reaction" and "major depression."  (Tr. 118-136).

5

Plaintiff was discharged with a referral to Geraldine Wu, M.D., a psychiatrist with whom she had been treating prior to the hospitalization. Dr. Wu discovered a number of stressors that impacted Plaintiff's life, among which were her mother's recent death, an attack upon her daughter and the recent murder of police officers. She reported low energy and motivation as well as crying spells, irritability and inability to sleep. Dr. Wu prescribed Xanax, Serentil, Zoloft and Buspar. Dr. Wu's diagnosis was major depressive disorder, post traumatic stress disorder as well as alcohol and cocaine abuse and dependence. Dr. Wu treated Plaintiff from January, 1996 to March, 1998 (Tr. 181-205).

Plaintiff was also hospitalized in December, 1999 at Middletown Regional Hospital for "suicidal concerns related to drug overdose." The discharge summary indicated that she "took three or four boxes of Benadryl with some Tylenol Sinus" and was initially seen in the emergency room, but later transferred to the psychiatric unit. The discharge summary indicated that "Plaintiff presented with a very severe array of loss, abuse, abandonment issues in addition to a recurrence of severe substance abuse." She was ultimately discharged against medical advice to pursue drug and alcohol rehabilitation at Fort Hamilton-Hughes Drug Treatment Center. The diagnosis was major depressive disorder, post traumatic stress disorder and cocaine dependency. (Tr. 206-219).

6

Following her hospitalization in 1999, Plaintiff sought counseling at Comprehensive Counseling Service.  She was on probation at the time and living at Hope House. The clinical impression of Alice Onady, M.D., was bipolar disorder. Plaintiff treated at the Center in April and May, 2001.  (Tr. 237-242).

Plaintiff was examined in May, 2003 by Mary Johnson, M.D.  Plaintiff's brief states that Plaintiff has asthma, as the ALJ so found, but concedes that the asthma "does not significantly restrict her."  Therefore, Dr. Johnson's findings relative to Plaintiff's asthma as well as Dr. Cho's physical residual functional capacity assessment are being ignored in the interest of time.  The history taken by Dr. Johnson indicated the two prior attempts at suicide and the hospitalizations resulting from those attempts.  Although not a psychiatrist, Dr. Johnson's impressions were that "the patient's memory, ability to relate, appearance and orientation are good. The level of intellectual functioning is normal." (Tr. 250-262).

Plaintiff was examined in June, 2003 by James Rosenthal, Psy. D., a clinical psychologist.  Dr. Rosenthal's history indicated that Plaintiff was physically and sexually abused between the ages of 8 and 13, ran away and married at age 14 and left school after the 7th grade, although she obtained a GED at age 35.  Plaintiff told of being married 4 times and of having one illegitimate child. Plaintiff told Dr. Rosenthal about her two suicide attempts and subsequent hospitalizations.  She also told about a prosecution for drug abuse and prostitution and about serving a 6-month term in prison.

7

Plaintiff told Dr. Rosenthal that she was able to do housekeeping, laundry, cook, shop and drive.  She told of manic incidents for a period of one to two weeks and marked by a "flight of ideas and high-risk behaviors" and then lapsing into a depressed state, which lasted "for months at a time" wherein she experiences crying spells and feels hopeless and worthless and experiences flashbacks of abuse."  Dr. Rosenthal assigned a GAF of 50 and opined that Plaintiff could understand, remember and follow simple one or two-step job instructions, but "her ability to tolerate the stress of day-to-day employment appears poor."  He also indicated that her ability to relate "appears moderately impaired," but her "ability to sustain attention and concentration to complete daily work tasks appears quite limited."  Dr. Rosenthal's diagnosis was major depression, post traumatic stress disorder and polysubstance abuse.  (Tr. 263-267).   Significantly, Dr. Rosenthal disagreed with a prior diagnosis of bipolar disorder.

A mental residual functional capacity assessment was done by Patricia Semmelman, Ph.D., in July, 2003.   Dr. Semmelman found that Plaintiff's understanding and memory were not significantly limited.  She found a mild to moderate limitation in Plaintiff's ability to maintain attention and concentration for extended periods and a moderate limitation of her ability to complete a normal workweek without interruptions from psychologically-based symptoms and to respond appropriately to changes in the work setting.  Dr. Semmelman found no significant limitation in Plaintiff's ability to socially interact, although in a different part

of the assessment, she rated Plaintiff's functional limitation in maintaining social functioning as "moderate."  Dr. Semmelman's diagnosis was anxiety disorder and drug/alcohol abuse and dependence.  (Tr. 268-285).

A mental residual functional capacity assessment was made by Steven Bliss, a clinical psychologist.  Plaintiff refers to Dr. Bliss as holding a Ph.D., while Defendant and the ALJ refer to Dr. Bliss as holding a Psy.D. degree.  Frankly, we cannot determine from the Dr. Bliss report what his precise credentials are, but in any event, Dr. Bliss found Plaintiff to have bipolar disorder in November, 2003. Aimee Richmond, M.D., a family practice physician, completed a mental residual functional capacity assessment in November, 2003.  Dr. Richmond opined that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to complete a normal workweek without interruptions from psychologically-based symptoms.  Plaintiff was also rated as markedly limited in her ability to set realistic goals and  to make plans independently. (Tr. 289).  Dr. Richmond's diagnosis was manic depression and post traumatic stress disorder.

Plaintiff consulted Comprehensive Counseling and Judith Freeland, M.D., a psychiatrist, in January, 2005, when she was assigned a GAF of 55 and a diagnosis of bipolar disorder.  Dr. Freeland had seen Plaintiff since July, 2004.  She displayed multiple symptoms: anhedonia, decreased energy, suicidal thoughts, feelings of guilt

or worthlessness, anxiety, mood disturbance, difficulty concentrating and recurrent and intrusive recollections of a traumatic experience. She also displayed psychomotor agitation, persistent disturbances of mood or affect, apprehensive expectation, paranoid thinking, recurrent obsessions or compulsions which are a source of marked distress, substance dependence, emotional withdrawal, bipolar syndrome and persistent irrational fear. In addition, Plaintiff has had intense and unstable personal relationships, displayed hyperactivity, motor tension, flight of ideas, manic syndrome deeply ingrained maladaptive patterns of behavior. She also showed loosening of associations, illogical thinking, vigilance and scanning, pressures of speech, easy distractibility, memory impairment, sleep disturbance, decreased need for sleep recurrent and severe panic attacks and involvement in activities which have a high probability of painful consequences. (Tr. 312-314).

Dr. Freeland rated as "no useful ability to function" Plaintiff's ability to maintain socially appropriate behavior and to use public transportation, the latter of which is quite surprising. Dr. Freeland also rated as "unable to meet competitive standards" Plaintiff's ability to interact appropriately with the general public and travel in unfamiliar places, the latter of which is equally surprising. Dr. Freeland then rated as "marked" Plaintiff's difficulty in maintaining social functioning, but "moderate" for Plaintiff's difficulty in maintaining concentration, persistence or pace. Dr. Freeland also noted four or more episodes of decompensation within a 12-month period. Dr. Freeland said that Plaintiff suffered from "a residual disease process that has

10

resulted in such a marginal adjustment that  even a minimal increase in mental demands or change in the environment would be predicted  to cause the individual to decompensate."   Dr. Freeland estimated that Plaintiff's impairments and/or resulting treatment would cause her to miss work for more than 4 days per month, that her impairments would last at least 12 months and that her patient was not a malingerer.

Dr. Freeland's opinion was that Plaintiff met the majority of the requirements for Listing 12.04(A) and (B) and therefore met the Listing.   She diagnosed Plaintiff with bipolar disorder and with post traumatic stress disorder.  Dr. Freeland rated as marked or extreme each of 19 limitations in the category of difficulties in social functioning.   She also rated as marked or extreme 7 out of 8 limitations in the category of impairments in maintaining concentration, persistence or pace.  (Tr. 312-323).

## OPINION

The following principles of law control resolution of the issues raised in this case.  Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*,

11

305 U.S. 197, 229 (1938)).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202.  To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months.  Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart

12

P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 CFR §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 CFR §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely

13

from a medical standpoint. *Higgs v. Bowen,* No. 87-6189, slip op. At 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321 (6th Cir. 1978); *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20

14

C.F.R. Subpart P, Appendix 2; *see Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon*

15

*v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3)and 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4)and 416.920a(c)(4).

16

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder.  If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form.  The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment.  *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1520a(c).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983).  A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file).  A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).  The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the

17

record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). While the Commissioner may have expertise in some matters, this expertise cannot supplant the medical expert. *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir. 1963); *Lachey v. Secretary of H.H.S.,* 508 F. Supp. 726, 730 (S.D. Ohio 1981).

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckle*r, 821 F.2d 316, 321 (6th Cir. 1987).

18

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued.  *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw).  Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).  Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing.  *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176.  *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777,

19

782 (6th Cir. 1987).  The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176.  *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

Plaintiff's first Statement of Error was that the ALJ erred by giving a disproportionate amount of weight to the opinion of Dr. Rosenthal, an examining psychologist, rather than to Dr. Freeland, a treating psychiatrist.  Actually, the two mental health professionals were in basic agreement on a number of issues.  First, Dr. Rosenthall's opinion was that Plaintiff's ability to tolerate workplace stress was in his words "poor."  Dr. Freeland rated Plaintiff's ability to deal with normal work stress as "unable to meet competitive standards."  Second, Dr. Rosenthal's opinion was that Plaintiff's ability to sustain attention and concentration "appears quite limited."  Dr. Freeland rated Plaintiff's ability to concentrate and persist as "marked or extreme."  Both agreed that Plaintiff's ability to relate to co-workers, supervisors and the general public was at least an issue.  Dr. Rosenthal considered Plaintiff's impairment  in this category to be "moderate," while Dr. Freeland considered Plaintiff's limitations to be "marked."  Both agreed that Plaintiff's ability to understand, remember and carry out short and simple instructions was unimpaired.  Dr. Richmond, a family practice physician and a generalist, also expressed an opinion that Plaintiff was markedly limited in her ability to maintain attention and

20

concentration for extended periods and to get along with coworkers.  Dr. Richmond also agreed with Dr. Freeland that Plaintiff's ability to complete a normal workweek without interruptions from psychologically-based symptoms was markedly impaired.

The consensus among the various mental health professionals who examined and/or treated Plaintiff was that her ability to concentrate and persist as well as her ability to tolerate workplace stress were genuine issues requiring accommodation in the ALJ's residual functional capacity assessment.  The fact that there was neither an accommodation for workplace stress nor an accommodation for Plaintiff's inability to concentrate and persist demonstrates error, but not the error about which Plaintiff complains.  The ALJ's opinion did not illustrate a preference for Dr. Rosenthal's opinion over that expressed by Dr. Freeland, only the fact that the ALJ considered Dr. Freeland's opinion to be extreme and unsupported. There was no error in the manner described by Plaintiff.

Plaintiff's second Statement of Error was that the ALJ failed to consider Plaintiff's bipolar disorder disabling because of the symptoms displayed during the manic and depressed stages.  Plaintiff's brief explains that she questions her ability to perform work on a sustained basis because of racing thoughts, concentration problems, sleep deficits and low energy levels during the manic phase and absentee problems and excessive sleep patterns during the depressed state.

21

There is some degree of disagreement that Plaintiff has a bipolar disorder. Dr. Summelman, a paper reviewer, found that she had an anxiety disorder. After both suicide attempts and resulting hospitalizations, psychiatrists at Good Samaritan Hospital diagnosed her with major depression, a diagnosis with which Dr. Wu agreed. Drs. Onady, Richmond, Bliss and Freeland all felt that Plaintiff had a bipolar disorder, a diagnosis the ALJ accepted. In any event, it is the resulting functional limitations which are of more concern than the accuracy of the diagnosis. Dr. Freeland expressed the opinion that Plaintiff would miss more than 4 days per month because of her mental impairments and treatment, a conclusion which stands unrebutted in the evidence base. The VE testified that "four days a month absenteeism would be subject to disciplinary action." We disagree that Plaintiff's ability to shop, drive and do housework in any way rebuts the opinion of Dr. Freeland. Plaintiff's second Statement of Error, thus, raises a valid point.

The third Statement of Error faults the ALJ for failing to find that Plaintiff suffers from post traumatic stress disorder. Defendant fails to address this issue in her brief. Drs. Freeland, Wu, Rosenthal and the psychiatrist from Middletown Regional Hospital, Paul Gillingham, M.D. all determined that Plaintiff had post traumatic stress disorder. In addition, Plaintiff related multiple events which could have been the stimulus for the traumatic event or events, for example, the death of her mother, multiple divorces, sexual and physical abuse as a child and imprisonment. Substantial evidence exists that Plaintiff suffers from post traumatic

22

stress disorder. Although there is room to debate the extent of her functional limitations resulting from her emotional state, one can conclude as we have done previously, that whatever the diagnosis, Plaintiff would miss more than four days of work per month and that would render her unemployable.

Next, Plaintiff faults the ALJ for making an adverse conclusion regarding her credibility. We are somewhat perplexed by this Statement of Error and Plaintiff's argument thereunder, which seems to suggest that the ALJ erred by concluding that because Plaintiff could do housework during her manic stage, that she could also do housework during her depressed state. The ALJ's opinion was based on the fact that Plaintiff was able to "cook, vacuum, wash her clothing, make crafts, visit with her boyfriend's daughter and watch television or movies," that she had a limited amount of mental health treatment and that she took prescribed medication to treat her mental condition. The ALJ obviously didn't believe that the transition from stage to stage was as dramatic as described by Plaintiff; however Plaintiff's criminal history and behavior didn't provide a basis for any conclusion that her credibility was on the high end either. Plaintiff's credibility, on the other hand was somewhat supported by the opinions of the treating sources, reference to whom was made previously. But the record provides ample reasons to doubt Plaintiff's credibility when her past behavior is considered and the ALJ had the opportunity to assess Plaintiff's credibility by viewing her testimony live. There was error, but not in this respect.

23

Lastly, Plaintiff challenges the adequacy of the residual functional capacity assessment and the hypothetical question drawn from it because the RFC makes no provision for Plaintiff's inability to deal with stress and pressure in the workplace and her impairments in the areas of concentration and attention.  This Statement of Error also has merit.  Substantial evidence supports the conclusion that whatever Plaintiff's diagnosis, she has a substantial problem with the ability to attend and concentrate and to an even greater extent, with the ability to deal effectively with workplace stress.   The ALJ attempted to accommodate the latter problem with a restriction that she be limited to jobs having minimal personal contact.   The restriction made sense only if the source of Plaintiff's stress was interpersonal relationships and there is some merit to that position.  No restriction was made, however, in terms of the quantity or amount of work, an equally valid source of stress.  It is in failing to limit Plaintiff to the types of jobs where quantity would not be a stressor that the ALJ erred.

However, were it not for our resolution of Plaintiff's second and third statements of error, the error could be corrected on remand without an additional hearing because the ALJ asked the VE a second hypothetical question in which he inquired about the number of available jobs had the ALJ limited Plaintiff to low stress jobs.  The VE responded that the number of jobs would be reduced, but there would remain a representative number of jobs.  However, in light of our finding in reference to Plaintiff's second, third  Statements of Error, a remand with instructions to accept the added restriction would be senseless.

24

## CONCLUSION

This matter should be remanded for an award of benefits. "[A]ll essential factual issues have been resolved and the record adequately establishes . . . plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). Because Dr. Freeland's opinion that Plaintiff would miss more than the amount of days per month permitted by most employers was unrebutted in the medical record, and because substantial evidence supports the conclusion that Plaintiff has post traumatic stress disorder and biplolar disorder resulting in a marked deficiency in dealing with workplace stress, Plaintiff is precluded from performing work on a "regular and continuing" basis for a 40-hour work week as required by Social Security Ruling 96-8p. Several courts have observed that "the Commissioner takes the position that at step five of the sequential disability determination, only a claimant's ability to perform full-time work will permit an ALJ to render a decision of 'not disabled.'" *Barsotti v. Commissioner, Social Sec. Admin.*, 2000 W.L. 328024 (D. Or. March 13, 2000). *See Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000); *Kelly v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999); *Sims v. Apfel*, 172 F.3d 879 (10th Cir. 1999)(unpublished), 1999 W.L. 55334, at *3; *Matz v. Sisters of Providence in Oregon*, No. Civ. 98-1598-JO, 1999 W.L. 1201682 (D. Or. Dec. 8, 1999). In other words, "[a] claimant is disabled if he cannot perform full-time work. SSR 96-8p." *Criner v. Barnhart*, 208 F. Supp.2d 937, 956 n.21 (N.D. Ill. 2002); *Gotz v. Barnhart*,

- 25 -

207 F. Supp.2d 886, 897 (E.D. Wis. 2002). "[P]art-time work does not constitute working on a 'regular and continuing' basis." *Carr v. Apfel*, 1999 W.L. 1489892, *5 (N.D. Ohio 1999). Thus, the proof of disability is strong and opposing evidence is lacking in substance. A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985). Accordingly, this matter should be remanded for an award of benefits.

## ORDER

Defendant objects to the recommendation that the matter be remanded for an award of benefits.

Judicial review of the defendant's decision is limited in scope by 42 U.S.C. § 405(g). The Court's sole function under the statute is to determine whether there is substantial evidence to support the defendant's findings of no disability. The defendant's findings should stand if, after a review of the record in its entirety, the Court finds that the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Mullen v. Sec. of HHS*, 800 F.2d 535 (6th Cir. 1986); *Kirk v. Sec. of HHS*, 667 F.2d 524 (6th Cir. 1981), *cert. denied* 461 U.S. 957 (1983).

- 26 -

Upon a ***de novo*** review of the record, especially in light of defendant's objections, the Court finds that defendant's contentions have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court.  The Court finds that the Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge that the plaintiff's statement of errors be sustained and the matter remanded to the Commissioner.

Accordingly, the Court **ADOPTS** the Report and Recommendation of the United States Magistrate Judge.  The decision of the Commissioner is hereby **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDED** for an award of benefits consistent with the Report and Recommendation.

This case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

     s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court